(129 So. 543)

**MANN v. MANN.**

No. 30121.

May 5, 1930.

Rehearing Denied July 2, 1930.

Slade & Slade, of New York City, and Dickson & Denny, of Shreveport, for appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellee.

THOMPSON, J.

This is a suit by the husband for a separation from bed and board on the ground of abandonment.

The petition alleges that the plaintiff and defendant were married on December 19, 1908, at Greenwich, Conn., where they established a matrimonial domicile for some time. That plaintiff moved to New Orleans, where he resided from the year 1912 to 1914, during part of which time the defendant also resided in said city, and a matrimonial domicile was maintained in said city by said parties.

That plaintiff came to Shreveport shortly prior to February 1, 1925, where he has since continuously maintained his residence and domicile, "and accordingly established the matrimonial domicile in said city within the jurisdiction of this Honorable Court."

It is further alleged that the defendant has abandoned her said husband, has refused to return to the matrimonial domicile, although plaintiff has repeatedly offered, invited, and urged her to do so, and has repeatedly offered to maintain a suitable place for that purpose, all without avail.

It is further alleged that the defendant is now residing in the city of New York, and, by reason of the absence of said defendant from the state of Louisiana, it is necessary that an attorney be appointed to represent her, and that all proceedings herein be had contradictorily with said attorney so appointed.

The court appointed an attorney to represent the defendant on whom service was made, and also service of one notice directed to the defendant through the curator ad hoc, commanding the wife to return to the domicile of her husband in the city of Shreveport. This notice was dated May 2, 1927.

On November 22, 1927, an answer was filed which was signed by the curator and by attorneys employed by the defendant.

In the very beginning of this answer, and in answer to paragraph one of the petition, it is specially denied that a matrimonial domicile was ever established in Shreveport, and in the second paragraph of the answer it is alleged that the matrimonial domicile is in the city of New York, state of New York.

The denial that a matrimonial domicile was ever established in Shreveport is repeated in the fifth paragraph of the answer.

Further answering, it is alleged that the plaintiff has abandoned defendant and refused and neglected to provide a suitable domicile for her and has refused and neglected to send funds in order that she might come to him.

It is further alleged that should the court hold that she has abandoned her husband, she is willing and ready to return to him upon his furnishing her with a domicile and upon his sending her the necessary funds to do so.

While the petition does not allege, the proof shows, and it is not disputed, that the plaintiff, after residing in New Orleans from 1912 till 1914, returned to the city of New York, where the matrimonial domicile had been established, and where it was maintained until the plaintiff came to Shreveport some time in January, 1925.

It is further shown that the defendant remained in New York after her husband came to Louisiana, and has never lived with her husband in Louisiana since the matrimonial domicile was re-established in New York in 1914.

After a trial the district judge held that the courts of Louisiana had jurisdiction, on the theory that the domicile of the husband was the domicile of the wife, and that the refusal of the wife, without just cause, to join her husband as his wife in Shreveport, was an abandonment, and further that the want of jurisdiction of the court was waived by the filing of an answer. Accordingly a judgment of separation was rendered in favor of plaintiff.

In the light of the pleadings and the evidence introduced, we think it may be fairly considered as established that, if there was any abandonment on the part of the wife, abandonment occurred in the state of New York and not after the plaintiff established his residence in Louisiana. And we say this because the last matrimonial domicile was in New York and the defendant has never resided with her husband in Louisiana.

The first question to be considered, therefore, is whether under such circumstances the courts of Louisiana, having personal jurisdiction over one of the spouses (in this case the husband), can grant a separation from bed and board in favor of that spouse residing in this state.

In the early case of Muller v. Hilton, 13 La. Ann. 1, 71 Am. Dec. 504, it was held:

"The abandonment by one of the married persons of the other, which is made a ground of separation from bed and board, by Art. 141 of the Civil Code, to be a good cause of action, must have originated while the parties were domiciled in this State. Where the marriage took place in New York, and the wife always lived there, the husband, who afterwards established his residence in Louisiana, cannot maintain an action for separation against his wife by summoning her to his domicil in Louisiana."

In the case of Heath v. Heath, 42 La. Ann. 437, 7 So. 540, it was held that the abandonment by one of the married persons of the other, to be made the ground of separation from bed and board, must originate in this state, where there is a matrimonial domicile.

"Where the matrimonial domicile was in Massachusetts, and the abandonment occurred there, and the husband moved to Louisiana, where he acquired a residence, and the wife refused to come to this state, he cannot sue in the courts of Louisiana for a separation from bed and board.

"The wife never having been in Louisiana, the husband and wife could not in her absence acquire a matrimonial domicile here, and have a common dwelling, to which she could be summoned to return."

That case is directly applicable to the instant case. The defendant never having left the matrimonial domicile in New York, and since that domicile was re-established in 1914, never having been in Louisiana, her husband in her absence could not acquire a matrimonial domicile in this state to which he could summon his wife to return.

In Nicholas v. Maddox, 52 La. Ann. 1493, 27 So. 966, the parties were married in another state and the husband came to Louisiana to reside. His wife did not come to this state to live with him, though he had constantly urged her to do so.

It was contended by the husband that the wife's refusal to follow him to a new abode was an abandonment.

In answer the court said:

"It has always been held by the courts of this state that a husband cannot leave the matrimonial domicile in another state, and come here, and obtain a dissolution of the marriage, on grounds arising when he was not a resident of the state. The question has always been considered as jurisdictional, rendering it legally impossible to sever the marriage ties without proper notification and bringing the one sued within the court's jurisdiction."

The court further stated that it must be borne in mind that the asserted abandonment by the defendant of the matrimonial domicile was not from a domicile established by the husband with the wife, after the former came to reside here.

In the more recent case of Mathews v. Mathews, 157 La. 930, 103 So. 267, this court said:

"We think it is the uniform and consistent jurisprudence of this state that, where both spouses were nonresidents of Louisiana, and the marriage was not contracted in this state, and the cause of action arose prior to the acquisition of a Louisiana domicile by either, the courts of this state will not entertain suits, instituted by either spouse, for separation from bed and board or for divorce."

And again in Evans v. Evans, 166 La. 146, 116 So. 831, it was held that under Civil Code, article 142, the courts of Louisiana will not entertain a suit for divorce, or for separation from bed and board, for a cause which arose elsewhere and before the parties were domiciled in this state.

It is true the court on rehearing in Stevens v. Allen, 139 La. 662, 71 So. 936, L. R. A. 1916E, 1115, held that, with certain stated exceptions, a married woman has no other domicile and can acquire no other, than that of her husband, and is bound to follow and live with him, wherever he may choose to reside.

And the same doctrine was announced in Lepenser v. Giffin, 146 La. 584, 83 So. 839.

In Clark v. Clark, 145 La. 740, 82 So. 875, 876, the parties were married in another state and the husband abandoned his wife and came to Louisiana to reside, and refused persistently to live with the plaintiff or to receive her at his residence in this state.

The court held that the action of the wife under such circumstances in a Louisiana court, or the jurisdiction of a Louisiana court to entertain her suit, for separation from bed and board on the ground of abandonment, did not depend upon her having had either a separate or a matrimonial domicile in Louisiana before or at the time her husband abandoned her in Arkansas, since he had established a domicile in Louisiana and persists in his refusal to live with his wife or to receive her at his residence.

There is no conflict between that case and the cases we have cited. The suit was at the domicile of the defendant husband in this state, who refused to receive his wife at such domicile.

The court in the case just mentioned gave its approval to the doctrine of the many cited cases which hold that the husband could not, by substituted process, subject his wife to the jurisdiction of a court in Louisiana, where there was neither a matrimonial domicile nor a separate domicile of the wife.

And the court expressly disapproved the doctrine broadly stated that the domicile of the husband is the domicile of the wife, that the wife must follow her husband and can have no other domicile.

"The aphorism that the domicile of the husband is that of the wife does not express the law accurately. What is meant by the maxim is that, if there be a matrimonial domicile, it is also the domicile of the wife; for, if there be no matrimonial domicile, the husband and wife may have separate domiciles, or be subject each to a separate jurisdiction, ratione personæ."

In the Mathews Case supra, it was said:

"We believe that the Stevens, George [143 La. 1032, 79 So. 832], and Lepenser Cases have been misconstrued. If closely reasoned and carefully analyzed it will be found that they have not overruled or repealed the jurisprudence of this state, denying access to its courts for the assertion of demands in suits for separation from bed or board or divorce for causes originating outside of the state and prior to the acquisition, by the plaintiff, of a Louisiana domicile."

And in the Evans Case cited supra, after stating that the rule is well settled that the courts of Louisiana will not entertain a suit for divorce, or for separation from bed and board, for a cause which arose elsewhere and before the parties were domiciled in this state, observe that the doctrine announced was not contrary to Stevens v. Allen, 139 La. 658, 71 So. 936, L. R. A. 1916E, 1115; George v. George, 143 La. 1032, 79 So. 832; Lepenser v. Giffin, 146 La. 584, 83 So. 839.

██ In concluding this phase of the case, we may say that it must now be regarded as the established jurisprudence that the courts of this state will not entertain jurisdiction of a suit for separation of bed and board or divorce brought by a husband, where the marriage took place in another state or country, where the cause for separation or divorce did not originate in this state and where the wife has never resided with her husband in this state or become a resident of this state, and further that the refusal of a wife to follow her husband to this state cannot be regarded as an abandonment occurring in this state under the maxim or dictum that the domicile of the husband is or becomes the domicile of the wife.

This brings us to the second question, that of waiver of jurisdiction by the filing of an answer.

██ The district judge predicated his ruling on article 93, Code of Practice, which pro-

vides that if one be cited before a judge whose jurisdiction does not extend to the place of his domicile, or usual residence, but who is competent to decide the cause brought before him and he plead to the merits, instead of declining the jurisdiction, the judgment given shall be valid, except the defendant be a minor.

In further support of his ruling the judge cites a line of decisions holding that parties may by consent waive personal jurisdiction and submit their controversies to the determination of another tribunal than that of their domicile having jurisdiction over the subject-matter, and that the latter tribunal thereby becomes vested with complete jurisdiction over the case.

It is apparent that the article of the Code of Practice and the decisions cited are inapplicable to a case such as here presented.

For, as already shown, the courts of this state are not competent to render a valid judgment such as here demanded for causes originating beyond the limits of this state, when a matrimonial domicile has never been established in this state.

The question therefore involves or pertains to the jurisdiction of the court ratione materiæ rather than ratione personæ.

■ It is well settled that parties cannot waive jurisdiction ratione materiæ, and, moreover, to recognize the waiver in this case would be tantamount to granting a separation on the consent of the wife, which would be contrary to public policy and established jurisprudence.

It is true in Tortorich v. Maestri, 146 La. 128, 83 So. 431, 433, the court held that, in view of the legislation authorizing a married woman to sue and be sued without the authorization of her husband, it was evident that the law (and with it the public policy) of the state had been changed, and equally evident that the courts are bound to recognize the change and conform their rulings thereto:

"Since, therefore, a married woman may now appear in court upon an equality with any other litigant or witness, and in a suit for divorce may by her testimony prove or disprove any fact or alleged fact material to the judgment therein, there can be no reason founded in law or logic why she may not, by an admission in her sworn pleadings, establish such fact."

The subject under discussion was the right of the husband to take a judgment of final divorce on the admissions of the defendant in her answer.

However, the Pleadings and Practice Act was amended after the above decision by Act No. 228 of 1924, by which the court is prohibited from rendering judgment on rule in matters of divorce or separation from bed and board on admissions contained in the answer.

We take it for granted, therefore, that the purpose of the lawmaker was to return to the established jurisprudence and rule of public policy which prohibits divorces or separation on the consent or admission of the parties.

What has been said was based on the conditions shown by the pleadings and evidence independent of any plea to the jurisdiction and competency of the court.

■ The fact remains, however, that the defendant did challenge the authority of the court in the very beginning of her answer and before pleading to any issue on the merits. It is true the defendant did not say that the court was without jurisdiction in so many words, but in the very first paragraph of her answer she specially denied that any matrimonial domicile was ever established or ever existed in the city of Shreveport, and in the second paragraph of her answer she alleges that the matrimonial domicile is in the city of New York, state of New York.

This must be regarded as a plea to the jurisdiction of the court, both ratione materiæ and personæ, for if there never was a matrimonial domicile in Louisiana, and if the matrimonial domicile was established and remained in the city of New York, then most assuredly the Louisiana court was without jurisdiction, both materiæ and personæ.

It is inconceivable that the defendant could be held as waiving jurisdiction, when she was protesting and asserting a state of facts which showed that the Louisiana court had no jurisdiction.

The plea of jurisdiction ratione personæ is a declinatory exception and may be pleaded in the answer previous to answering to the merits. Code of Practice, articles 334, 335 and 336.

As we have seen, the absence of a matrimonial domicile in Louisiana and the then existence of such domicile in New York was specially pleaded in the beginning of the answer and before any reference to any issue involving and touching the merits. This was all that was necessary under the law.

The judgment is reversed, and plaintiff's demand is rejected, and his suit is dismissed at his costs.

BRUNOT, J., concurs in the decree.